**SO ORDERED.**

**SIGNED this 07 day of August, 2006.**

_____
                        **J. Rich Leonard**
                        **United States Bankruptcy Judge**
_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WILSON DIVISION

IN RE:

| | |
|---|---|
| **CONVALESCENT CENTER OF ROANOKE RAPIDS, INC.,** | **06-00310-8-RDD** |
| **CONVALESCENT CENTER OF SANFORD, INC.,** | **06-00311-8-RDD** |
| **CONVALESCENT CENTER, INC.,** | **06-00312-8-RDD** |
| **Debtors.** | **Chapter 11** |

### ORDER

Before the court are the United States' motions to substantively consolidate the above- named Chapter 11 cases. On July 18, 2006, the court conducted a hearing on these matters in Wilmington, North Carolina. This order confirms and provides the rationale for the ruling at the conclusion of the hearing denying the motions.

Two business days prior to the scheduled confirmation hearings in these cases, the United States filed the subject motions to consolidate the estates of Convalescent Center of Roanoke Rapids, Inc. ("Roanoke Rapids"), Convalescent Center of Sanford, Inc. ("Sanford"), and Convalescent Center, Inc. ("CCI"). The United States asserts that the three debtors shared financial and management resources and

1

that assets and funds were freely transferred among them. The United States asserts that it will be unfairly prejudiced if the cases are not consolidated because the bulk of the equity is concentrated in Roanoke Rapids. While Roanoke Rapids has more than sufficient resources to pay its employment taxes through the Chapter 11 plan, the United States argues that unpaid employment taxes are also owed by Sanford and the related non-debtor entity, Convalescent Center of Lee County ("Lee"). The United States argues that administration of cases will be simplified if the estates of Roanoke Rapids, Sanford, and CCI are substantively consolidated. It contends that the only creditors potentially harmed by consolidation are the unsecured creditors of Roanoke Rapids. The United States suggests that those unsecured creditors be allowed a priority position over competing unsecured creditors. The debtors oppose consolidation and assert that it is not appropriate, as each debtor has operated as an independent entity with its own assets and liabilities.

Ronnette Cox testified at the hearing. Ms. Cox is the vice president of the three debtors and other non-debtor entities, including Lee, Convalescent Center Landholdings, LLC ("Landholdings"), Lee Retirement Services, Inc., Trace Rehabilitation & Health Services, Inc., and Trinity Medical Supply, Inc. (collectively referred to as the "related entities"). Ms. Cox's husband, Doyle Cox, is the president and 100% shareholder of the related entities. The only other officer of the related entities is Marian Jones who serves as secretary. Ms. Cox said that separate board meetings were conducted for each entity.

Roanoke Rapids owns its real and personal property that it used for operating its facility. In June 2005, Roanoke Rapids entered into a 10-year lease with Liberty Commons Nursing and Rehabilitation Center of Halifax County, Inc. ("Liberty") for all the real and personal property associated with the Roanoke Rapids facility. Monthly payments pursuant to the lease are $20,911.00. Liberty is required to

2

purchase the subject property at the end of the lease; however, Roanoke Rapids may also trigger the sale during the course of the lease for the appraised price of the property. In order for Roanoke Rapids to enter the lease agreement, Branch Bank and Trust Company ("BB&T") required that the mortgage encumbering the Roanoke Rapids property be satisfied. Thus, Mr. and Ms. Cox took a loan of $400,000.00 secured by their personal residence to pay off the mortgage on the Roanoke Rapids property. Roanoke Rapids intends to use the monthly rent payments from Liberty to pay off all of its liabilities in its case with the residual going to the shareholder of Roanoke Rapids.

The United States argues that the Roanoke Rapids case will result in a windfall for the Coxes because Mr. Cox is the sole shareholder and will receive the residual in that case while employment taxes of Sanford and Lee will remain unpaid. Unlike Roanoke Rapids, neither Sanford nor Lee owned property when operating their respective facilities; rather, Sanford leased all of its real and personal property from J.E. Ammons, an individual unaffiliated with the Coxes or the related entities, who chose not to renew the lease in June 2005. Lee leased real and personal property from Landholdings. In June 2005, Landholdings sold that real and personal property to Liberty for approximately $2 million. The proceeds satisfied the mortgage to BB&T on the property, leaving $423,000.00 in equity. Out of that equity, Landholdings loaned money to other entities to pay assessment fees. Ms. Cox said that Landholdings used promissory notes to make those loans.

Ms Cox clarified that CCI is the management company, and that the other related entities paid management fees to CCI. Ms. Cox said that Roanoke Rapids, Sanford, and Lee used one bank account, but they had separate bank statements, separate tax identification numbers, and separate administrators for daily operations of the facilities. Each entity maintained separate financial records. When one entity

3

borrowed from another, Ms. Cox said that the loans were fully documented. Ms. Cox said that Medicare / Medicaid reimbursement was done on a facility basis, and that the records for each facility had to substantiate costs for reimbursement. Ms. Cox said that the facilities had been audited yearly by Medicare / Medicaid, and that commingling of funds had never been an issue. In addition, Ms. Cox stated that each entity had its own physical assets, such as equipment, for operating its facility. Thus, the entities did not share or transfer equipment or other assets among one another.

Ms. Cox said that, when Landholdings and Roanoke Rapids borrowed funds to purchase real property, BB&T required cross-collateralization of the properties owned by the related entities. Ms. Cox also said that she would often order bulk quantities of supplies from creditors to satisfy the needs of more than one facility in order to get a good price. However, when looking at the record in each case before the court, each debtor had its own unique set of creditors.

The court has authority to substantively consolidate separate bankruptcy estates into a single estate pursuant to it general equitable powers under § 105. In re Bonham, 226 B.R. 56 (Bankr. D. Alaska 1998); Munford, Inc., v. TOC Retail, Inc. (In re Munford, Inc.), 115 B.R. 390, 397 (Bankr. N.D. Ga. 1990). "Substantive consolidation should be used sparingly to prevent injustice." In re Fas Mart Convenience Stores, Inc., 320 B.R. 587, 594 (Bankr. E.D.Va 2004); Bonham, 226 B.R. at 76.  Substantive consolidation has even been applied to consolidate a debtor with a non-debtor party in unusual circumstances. In re Lease-A-Fleet, Inc., 141 B.R. 869, 872-73 (Bankr. E.D. Pa. 1992); however that entails an even more cautious analysis of the facts at hand. Fas Mart, 320 B.R. at 594. While the United States raises the unpaid employment taxes of Lee County as a reason for its inequitable treatment, it is not seeking substantive consolidation of that non-debtor with Roanoke Rapids, CCI, and Sanford. Thus, this

court must only consider whether the three debtors' estates should be substantively consolidated.

For purposes of determining whether consolidation is appropriate, the United States presented a couple of tests for the court's consideration that employ multiple factors. The court acknowledges the well-recognized test developed by the Second Circuit which boils those multi-factor tests down to two critical considerations: (i) "whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit, . . . or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors." Union Savings Bank v. Augie / Restivo Baking Co., Ltd. (In re Augie / Restivo Baking Co., Ltd.), 860 F.2d 515, 518 (2d Cir. 1988). While the Fourth Circuit has not adopted a test for determining whether substantive consolidation is appropriate, a fellow bankruptcy court within the Fourth Circuit has adopted the two-factor test set forth in Augie / Restivo. *See* In re Fas Mart Convenience Stores, Inc., 320 B.R. 587, 594 (Bankr. E.D.Va. 2004)(stating that the "Second Circuit has outlined a widely-used test for determining when it is appropriate to substantively consolidate the bankruptcy cases of more than one debtor.")

First, the court considers whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit. As noted above, Ms. Cox testified that, for purposes of large real estate loans to Roanoke Rapids and Landholdings, BB&T required cross-collateralization among the related entities. In addition, Ms. Cox said that she often placed orders in bulk quantities for more than one entity in order to gain better deals. Standing alone, this evidence leans towards consolidation; however, if these entities were viewed singularly, then they would have conforming lists of creditors. That is not the case here.

While the debtors have a few creditors in common, the bulk of the creditors are unique to each

debtor. The debtors reported that, with the exception of one creditor, there had been no duplicative claims filed in these cases. That supports that each creditor is looking to a specific case for payment. For example, Omnicare of Carolina is Roanoke Rapid's second largest creditor, and it provided goods and services to Roanoke Rapids pursuant to a pharmacy services agreement and pharmacy consulting agreement that it entered with Roanoke Rapids and not the other debtors. Thus, Omnicare looked to the Roanoke Rapids case for payment. Moreover, Roanoke Rapids used the resources and services of many creditors located in the vicinity of its facility, perhaps for the sake of convenience, that were not used by the other debtors. The United States suggests that, if consolidation is allowed, then the unsecured creditors of Roanoke Rapids could receive a priority position. However, the very fact that one set of unsecured creditors would need priority over another supports that these debtors were not viewed to the world as one entity for purposes of extending credit. Moreover, even the United States has viewed these entities separately, as it has filed separate claims in these cases and has not sought to assess the liability for taxes of one debtor against another.

      Secondly, the court considers whether the debtors' affairs were so entangled that consolidation will benefit all creditors. In her testimony, Ms. Cox stated that CCI managed the finances for the related entities, and that Roanoke Rapids, Sanford and the non-debtor Lee shared a bank account. However, each entity received a separate bank statement, a separate tax identification number, and a separate administrator for conducting daily operations at the facilities. Moreover, each entity maintained separate financial records. Ms. Cox clarified that, when one entity borrowed from another, the transaction was fully documented. The fact that these entities were able to pass annual audits rigorously performed by Medicaid / Medicare supports that bookkeeping remained in order and was maintained separately for each entity. Moreover,

Ms. Cox stated that each entity had its own equipment and other assets for performing its operations.

The court denies the United States' motions to consolidate. The motions were made at the eleventh hour, and they are not based upon any recent developments in the cases. If the motions to consolidate are granted, there will be significant procedural prejudice to the debtors. At the time the motions to consolidate were filed, the debtors had already proceeded with plan development, disclosures, and balloting in all three cases. More importantly, the evidence shows that these debtors have been operated and maintained separately. The evidence does not support that there has been a diversion of assets that would stack equity in one debtor at the expense of another. The Coxes made the choice to place their personal equity in Roanoke Rapids and not the other debtors, but that was their prerogative to make that decision. Finally, the fact that the court would have to give a priority position to the Roanoke Rapids unsecured creditors over other unsecured creditors, is a factor weighing against consolidation. The court, therefore, is not convinced that consolidation is appropriate in these cases.

"END OF DOCUMENT"